UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

DAVIN HACKETT,                )
                              )
    *Plaintiff*            )
    v.                    )   Cause No. 3:17-CV-278 RLM-MGG
                              )
CITY OF SOUTH BEND, *et al.*, )
                              )
    *Defendants*          )

## OPINION AND ORDER

The defendants have moved to disqualify Daniel Pfeifer, one of plaintiff's two attorneys, and his law firm, Pfeifer Morgan & Stesiak, contending that Mr. Pfeifer's prior representation of two South Bend police officers who aren't parties to this litigation in a related matter creates a conflict of interest under Rule 1.9 of the Indiana Rules of Professional Conduct and/or a substantial risk that confidential information acquired from them will be used to their disadvantage in this case, in violation of Ind. R. Prof. Cond. 1.6 and 1.9 and federal common law, which prohibits an attorney from representing "an adversary of his former client, if the subject matter of the two representations is 'substantially related[.]'" Analytica Inc. v. NPD Research, Inc., 708 F.2d 1263, 1266 (7th Cir. 1983). The court denies the motion.

I. *Standard*

Disqualification of an attorney is a "'drastic measure" and imposed only when "absolutely necessary." Watkins v. Trans Union, LLC, 869 F.3d 514, 519 (7th Cir. 2017) (quoting Owen v. Wangerin, 985 F.2d 312, 317 (7th Cir. 1993) (quoting Schiessle v. Stephens, 717 F.2d 417, 419-20 (7th Cir. 1983)). Whether an attorney should be disqualified is determined by the facts and circumstances surrounding the current matter and the prior representation given to the former client. Watkins v. Trans Union, LLC, 869 F.3d 514, 519 (7th Cir. 2017).

The court employs a three-step analysis in determining whether disqualification is an appropriate remedy. Schiessle v. Stephens, 717 F.2d 417 (7th Cir. 1983). It must first "determine whether a substantial relationship exists between the subject matter of the prior and present representations." Id. If a substantial relationship exists, the court can "presume that the attorney received confidential information during his prior representation," without proof that the attorney received such information. Id. at 255-256; *see also* Schloetter v. Railoc of Indiana, Inc., 546 F.2d 706, 710 (7th Cir. 1976)). The presumption can be rebutted if the attorney can "clearly and effectively show that he had no knowledge of the confidences and secrets of the client," Freeman v. Chicago Musical Instr. Co., 689 F.2d 715, 723 (7th Cir. 1982); *see also* Schiessle v. Stephens, 717 F.2d 417 (7th Cir. 1983), or that he didn't share any those confidences with his current

2

client or co-counsel. *See* <u>Novo Terapeutisk Laboratorium A/S v. Baxter Travenol Laboratories, Inc.</u>, 607 F.2d 186 (7th Cir. 1979).

## II. *Discussion*

### A. *Background*

On July 23, 2015, Sergeants O'Neill and Hiipakka received an email from Chief of Police Scott Ruszkowski telling them that Davin Hackett had accepted a position on the bomb squad following his return from military deployment and asking one of them to relinquish his position on the squad to make room for him, pursuant to a written agreement they'd signed in May of 2015. *See* Exh. 1 to the Affidavit of Ryan O'Neill [Doc. No.22-1]. Sgts. O'Neill and Hiipakka considered possible legal action against Mr. Hackett and the City, and contacted Mr. Pfeifer for advice. Officer O'Neill and/or Officer Hiipakka met with Mr. Pfeifer once for about fifteen minutes (Mr. Pfeifer attests that he only met with O'Neill), and told him that the Department had asked that one of them resign from the bomb squad to make room for Mr. Hackett, that they were on the bomb squad before Mr. Hackett, and that they thought it was unfair. Both officers attest that Mr. Pfeifer gave them advice and "helped to ghost-write an email message that Sgt. O'Neill later sent to various senior police officers and the City's Human Resources Manager" advising that: "neither one of us are going to relinquish our position. If you want either of us to be removed you will need to take the necessary steps and

3

we will see what comes of your actions." [Doc. No. 22-1 and 22-2]. Neither Sgt. O'Neill or Sgt. Hiipakka agreed that Mr. Pfeifer would represent Officer Hackett in this litigation, and both expressed concern that information they shared with Mr. Pfeifer and thought was confidential could be used to benefit Mr. Hackett. [Doc. Nos. 22-1 and 22-2].

In response to the motion to disqualify, Mr. Pfeifer submitted an affidavit in which he attests that:

- During the meeting, he was provided with "much of the same information" that Sgts. O'Neill and Hiipakka provided in their affidavits, "specifically that O'Neill and Hiipakka were on the Bomb Squad before Hackett was placed on the squad" and that the Police Department had instructed one of them to resign from the squad to make room for Hackett.

- He "did not learn about any of officers O'Neill or Hiipakka's qualifications for the position", and "there was never any conversation, discussion, or mention of O'Neill or Hiipakka … making any sort of legal claim against Hackett."

- Based on the information provided, Mr. Pfeifer didn't think they had a claim against the City or the Police Department, but "suggested that they send an email letting their command know that they both

4

- wished to remain part of the Bomb Squad" and told them they could copy him on the email, if they wished.

- Mr. Pfeifer didn't write or "ghost write" the email that Sgts. O'Neill and Hiipakka sent to Chief Ruszkoski and others at the Department on July 25, 2015; "did not see or review the email before it was sent"; and "had no further communications with either O'Neill or Hiipakka [after the July 2015 meeting]."

[Doc. No. 24-1].

B. *Analysis*

As a general rule, only a current or former client has standing to seek disqualification of an attorney from a matter pending before a court. *See* In re Yarn Processing Patent Validity Litig., 530 F.2d 83, 88 (5th Cir. 1976); United States v. White, 743 F.2d 488, 494 (7th Cir. 1984); Mills v. Hausmann-McNally, S.C., 992 F.Supp.2d 885, 891-92 (S.D. Ind. 2014); Tizes v. Curico, 1997 WL 116797, at *2 (N.D. Ill. Mar. 12, 1997). But the rule isn't absolute, and courts have allowed opposing counsel to bring a motion to disqualify "[w]here the conflict is such as clearly to call in question the fair or efficient administration of justice." Mills v. Hausmann-McNally, S.C., 992 F.Supp.2d at 891-892; Emmis Operating

Co. v. CBS Radio, Inc., 480 F.Supp.2d 1111, 1115-1116 (S.D. Ind. 2007); Tizes v. Curico, 1997 WL 116797, at *2 (N.D. Ill. Mar. 12, 1997).[1]

Indiana's Rules of Professional Conduct and the Seventh Circuit Standards of Professional Conduct govern the conduct of attorneys practicing in this court. Local Rule 83-5(e). The court assumes for purposes of this motion that the matters are substantially related, and that an attorney-client relationship existed between Mr. Pfeifer and Sgts. O'Neill and Hiipakka in July 2015. *See* United States v. Evans, 113 F.3d 1457 (7th Cir. 1997) ("the critical inquiry is whether [Pfeifer] was acting in his capacity as a professional legal advisor"). Professional Conduct Rule 1.9(c), which applies to former clients, and/or Rule 1.18, which applies to prospective clients, would therefore apply.[2] In re Anonymous, 932 N.E.2d 671, 673 (Ind. 2010).

Rule 1.9(c) provides that:

A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter:

---

[1] Mr. Pfeifer waived any argument he may have had regarding the defendants' standing to move for disqualification by failing to raise it in his response. RK Co. v. See, 622 F.3d 846, 851 (7th Cir. 2010)("Prudential standing issues are subject to waiver."); In re Ray, 597 F.3d 871, 875 (7th Cir. 2010) ("nonconstitutional or prudential lack of standing may be waived by a party that fails to timely raise the issue.").

[2] Professional Conduct Rule 1.6 applies to current clients, In re Anonymous, 932 N.E.2d 671, 673 (Ind. 2010), and there is no evidence to suggest that Mr. Pfeifer has an ongoing attorney-client relationship with Sgt. O'Neill or Sgt. Hiipakka.

6

> (1) use information relating to the representation to the disadvantage of the former client except as these Rules would permit or require with respect to a client, or when the information has become generally known; or
>
> (2) reveal information relating to the representation except as these Rules would permit or require with respect to a client.

Similarly, Professional Conduct Rule 1.18, states that:

> (a) A person who discusses with a lawyer the possibility of forming a client-lawyer relationship with respect to a matter is a prospective client.
>
> (b) Even when no client-lawyer relationship ensues, a lawyer who has had discussions with a prospective client shall not use or reveal information learned in the consultation, except as Rule 1.9 would permit with respect to information of a former client.

In their affidavits, Sgts. O'Neill and Hiipakka express concern that Mr. Pfeifer might improperly use or reveal information they shared with him during the consultation in July 2015. But no evidence suggests that he has done so already, and the court has no reason to doubt that Mr. Pfeifer is aware of his obligations to Sgts. O'Neill and Hiipakka under Rules 1.9 and 1.18 and will continue to honor those obligations in the future.

Accordingly the court DENIES the motion to disqualify Mr. Pfeifer as counsel for the plaintiff [Doc. No. 21]. Good cause having been shown, the agreed motion to extend the dispositive motions deadline [Doc. No. 27] is GRANTED. A scheduling conference will be set by separate order to select a new deadline.

SO ORDERED.

ENTERED: July 5, 2018

/s/ Robert L. Miller, Jr.
Judge
United States District Court