UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| DAVIN HACKETT, | ) | |
| | ) | |
| *Plaintiff* | ) | |
| v. | ) | Cause No. 3:17-CV-278 RLM-MGG |
| | ) | |
| CITY OF SOUTH BEND, *et al.*, | ) | |
| | ) | |
| *Defendants* | ) | |

OPINION AND ORDER

The Uniformed Services Employment and Reemployment Act – "USERRA,"

as it's called – provides various employment-related protections for men and

women serving in the United States Armed Forces. One of its provisions protects

service members from adverse actions that were motivated, at least in part, by the

employee's military service. 38 U.S.C. § 4311(a), (c)(1). To amount to an "adverse

action" from which service members are protected, the employer's conduct must

be something more than a mere inconvenience or change in job duties, Callaway

v. Milwaukee County, 180 F.3rd 820, 826 (7th Cir. 1999). The change in

conditions must be significant, rather than trivial. Crews v. City of Mt. Vernon,

567 F.3d 860, 869 (7th Cir. 2009); Mayer v. City of Chicago, 547 F.3d 817, 824

(7th Cir. 2008); Halloway v. Milwaukee County, 180 F.3d 820, 826 (7th Cir 1999).

The plaintiff's military service or obligation for service must have been a

motivating factor in the adverse action. *See* Staub v. Proctor Hospital, 562 U.S.

411 (2011); <u>Ashman v. Winnebago County Sheriff's Dept.</u>, No. 11C50388, 2015 WL 641784, at *4 (N.D. Ill., Feb. 13, 2015) .

Davin Hackett was a South Bend police officer from 2006 to 2017. He has served in the armed forces virtually since 1997 and was serving in the Air Force National Guard during the time involved in this case. Mr. Hackett contends that the City of South Bend and its current and immediately past chiefs of police violated USERRA with respect to him in 2015 and 2016.[1] The defendants have moved for summary judgment, and after reviewing the record and hearing argument, the court agrees with the defendants.

A party moving for summary judgment, as the defendants have done here, asserts that there are no disputed material facts that need to be resolved at trial and that the moving party wins the case as a matter of law on the undisputed facts. <u>Protective Life Ins. Co. v. Hansen</u>, 632 F.3d 388, 391-392 (7th Cir. 2011). To defeat a summary judgment motion, the plaintiff must point to admissible evidence upon which a jury could decide for the plaintiff. <u>Marr v. Bank of Am., N,A.</u>, 662 F.3d 963, 966 (7th Cir. 2011). Today's issue is what a jury could find to be true rather than what the court believes to be true, so the court can't weigh conflicting evidence; instead, the court must view all of the evidence in the summary judgment record as favorably as reasonably possible to the plaintiff, and

---

[1] Officer Hackett's complaint contained several other claims, but he abandoned them during the summary judgment process.

must draw all reasonable inferences from that evidence in the plaintiff's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). The summary judgment motion has replaced the motion for directed verdict as the "put up or shut up" stage of civil litigation. Hammel v. Eau Galle Cheese Factory, 407 F.3d 852, 859 (7th Cir. 2005). All that follows is based on those summary judgment precepts.

In May 2014 the South Bend Police Department posted openings for several hazardous device technician positions on the Department's bomb squad. Officer Hackett, an ordinance technician in the Air Force National Guard, applied. South Bend's human resources director told him that he was qualified on paper, but he was excluded from consideration because his continued military service, with its periodic deployments, would cause him to miss necessary training and callouts. That policy would violate the USERRA. Officer Hackett complained to the United Equal Employment Opportunity Commission and the United States Department of Labor. While the EEOC and the Department of Labor were investigating, the police department named Officer Hackett to the bomb squad.

By this time, people already had been selected for the bomb squad, and Sgt. Ryan Hiipakka and Sgt. Ryan O'Neil had been chosen as alternates. When Officer Hackett was placed on the bomb squad, Division Chief Scott Ruszkowski adopted a procedure that some might find surprising: he said the bomb squad was already full and told Sgts. Hiipakka and O'Neil that as the newest bomb squad members,

one of them would have to leave the bomb squad to make room for Officer Hackett, and they should decide between themselves.

Bomb squad members resented Officer Hackett because of his path to his appointment. Sgt. O'Neil appears to have been particularly rankled: he referred to Officer Hackett in a Facebook post as a "Blue Falcon," which the parties tell the court is military slang for "Buddy Fucker." Other officers and their wives commented on Sgt. O'Neil's post.

Meanwhile, Officer Hackett was being ostracized from the bomb squad. When he showed up for the first practice, he had to sit at a desk all the rest of the squad underwent training. When Officer Hackett arrived for a second bomb squad practice, Sgt. O'Neil and another officer saw him and left without acknowledging his presence; Officer Hackett received no training that day. Officer Hackett never received keys to the bomb squad room; he never received the brochure that explains the prerequisites for enrolling in the FBI's hazardous device school. Officer Hackett eventually complained to Chief Teachman and was told (not by Chief Teachman) to report for his regular shift rather than for bomb squad practices until the Human Resources Department completed its investigation of his complaint. Before that investigation was completed, the head of the bomb squad limited practices to certified technicians.

Officer Hackett wasn't a certified technician. One becomes a certified technician through a process that exceeds eighteen months and includes training

at the FBI's hazardous device school. The "welcome" brochure – the one Officer Hackett wasn't given – explained the requirements for enrolling in the hazardous device school. But because he wasn't a certified technician, the new policy that only certified technicians could participate in bomb squad practice effectively excluded Officer Hackett.

Officer Hackett contends that his problems with the bomb squad and Sgt. O'Neil all trace back to his service in the Air Force National Guard: had he not been in the National Guard, he wouldn't have been told that the possibility of deployments eliminated him from assignment to the bomb squad, which in turn led to the investigation by the Department of Labor and the EEOC, which in turn led to Officer Hackett being assigned to the bomb squad after the advertised positions had been filled, which in turn led to Division Chief Ruszkowski's directive that Sgt. O'Neil and Sgt. Hiipakka sort out for themselves who would be leaving the bomb squad, which led to the ostracism that kept Officer Hackett from participating and advancing in the bomb squad.

These facts don't support a finding that the defendants violated USERRA. As stated at the outset, USERRA only concerns itself with "adverse actions," which involve a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Burlington Industries Inc. v. Ellerth, 524

U.S. 742, 741 (1998). Officer Hackett didn't experience an adverse action as the act uses that term.

The City and its police department placed Officer Hackett on the bomb squad after Officer Hackett complained to the federal agencies. If anything was retaliatory, it was the actions of Sgt. O'Neil and other bomb squad members. Participation on the bomb squad might be desirable or prestigious, but it wouldn't have changed Officer Hackett's rank; it wouldn't have changed his shift to something more desirable; and it wouldn't have increased his pay. Officer Hackett points to opportunities that he would have had down the road, after becoming a certified technician. But in doing so, he assumes that he would have completed the requirements for becoming a certified technician. He might have, but no evidence in this record supports that assumption. No one added to the bomb squad in 2016 had become a certified technician by October 2018, when Chief Ruzkowski gave his deposition.

There can be little doubt that Officer Hackett was embarrassed, humiliated, and frustrated at his treatment. But the ostracism didn't cost him pay, rank, or job duties. One might easily think, based on the record before the court, that the treatment Officer Hackett received was unwarranted and inappropriate. But it wasn't a violation of USERRA.

Officer Hackett's second claim is based on his 2015 application for a patrol sergeant's position. His Air Force National Guard deployment coincided with the

6

period in which applicants were to be interviewed and rated. The police department delayed the process to accommodate Officer Hackett, who scrambled back to town to be interviewed. Applicants were also required to select and submit a police report that the applicant considered her or his "best work." Officer Hackett had no chance before his interview to review his past work and choose the best, so he was allowed to submit it after the interview. Officer Hackett took "several days" to select his exemplar and turn it in.[2] By that time, the other applicants already had been ranked by then-Division Chief Ruszkowski.

The ranking that had been completed by the time Officer Hackett turned in his "best work" showed him in fifth place, with the score of 124.25, with a notation that Chief Ruszkowski was still waiting for Officer Hackett's "best work." At some later point, Chief Ruszkowski graded Officer Hackett's exemplar as worth 6.5 points.

Officer Hackett reasons that if those points were added to his pre-submission score, his score would have been 130.75, which would have placed him third on the list (one of those ranked ahead of Officer Hackett was later disqualified). Despite finishing in second or third place (as he sees it), Officer Hackett's name wasn't submitted for promotion.

Officer Hackett reasons that his military service kept him from advancing in the sergeant selection process, in violation of USERRA. Had the selection

---

[2] Officer Hackett's counsel couldn't tell the court how long "several days" was.

process not begun during his deployment, he wouldn't have had to submit his "best work" after everybody else had been scored and ranked, and nobody would have left his "best work" score off the ranking based on other factors, and he would have been within the group recommended for a sergeant position.

Officer Hackett assumes that has 124.25 score reflects his interview but not his "best work," and that his "best work" score of 6.5 should have been, but wasn't, added in. That's not exactly what Chief Ruszkowski said in his deposition. He testified that the 124.25 score might have included the "best work" score, and that if the 125.25 score was based on the interviews alone, the "best work" score would have been added – unless the "best work" sample was submitted too late. The summary judgment record doesn't seem to contain any information about any deadline for submission, the date to which that deadline might have been extended for Officer Hackett, or the date on which Officer Hackett finally submitted his "best work" sample. Still, while the evidence doesn't compel a finding that Officer Hackett's "best work" was handed in too late to count, a jury could infer that if it wasn't submitted in a timely fashion, Chief Ruszkowski wouldn't have graded it.

Still, no reasonable jury could find that the city and its chiefs violated Officer Hackett's USERRA rights. No reasonable jury could infer that Officer Hackett lost out on the promotion because some antimilitary or antideployment feeling motivated the defendants. Viewing the evidence in the light most favorable

to Officer Hackett, someone in the grading process messed up and the rankings

didn't reflect Officer Hackett's "best work" score.[3] But USERRA protects service

men and women against adverse actions motivated (at least in part) by negative

feelings about their service or deployments, not against simple human errors. The

summary judgment record doesn't contain anything from which a reasonable jury,

however favorably inclined toward Officer Hackett, could find that any antimilitary

motivation was involved in the process that showed him finishing fourth on a list

from which the top three were to be recommended for promotion.

The evidence that's been placed before the court wouldn't allow Officer

Hackett to win on either of his claims at a trial, so the defendants are entitled to

summary judgment. The court GRANTS the defendants' motion for summary

judgment [Doc. No. 44], and VACATES the August 27, 2019 scheduling

conference. The Clerk shall enter judgment accordingly.

SO ORDERED.

ENTERED:    July 24, 2019 


                            /s/ Robert L. Miller, Jr.      
                            Judge, United States District Court

---

[3] It might also be that the "best work" grade was already part of his 124.25 score, but because today's question isn't who's right, but rather whether a trial is needed, the court addresses the inference that would help Officer Hackett.